**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ROBERT M. W.,<br><br>         Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>         Defendant. | Case No. 19 C 3165<br><br>Magistrate Judge Sunil R. Harjani |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Robert M. W. seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income benefits. Because the Seventh Circuit reversed and remanded this case to the agency, the law of the case doctrine required the ALJ to conform his further proceedings on remand to the principles set forth in the appellate opinion, unless there was a compelling reason to depart. *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020). After "an appellate court either expressly or by necessary implication decides an issue, the decision [is] binding upon all subsequent proceedings in the same case." *Id.* (internal quotations and citation omitted). For the reasons set forth below, the ALJ did not follow the Seventh Circuit's directives and his second decision is unsupported by substantial evidence.[1] The Court also recommends that Robert's case be assigned to a different ALJ on remand.

---

[1] Before beginning its analysis, the Court notes that the briefing in this case suffers from the same inadequacies the Court has noticed in the briefing in numerous other social security cases. As seems to be a persistent pattern in the briefing in social security cases, the parties fail to meaningfully and fully develop the issues involved and fail to directly address each other's arguments. These failures impede the Court's efficient consideration of the matter. In the future, the Court expects counsel in social security cases to more thoroughly develop their arguments and directly address the specific arguments raised by the other party.

## I. BACKGROUND

Robert, who is now 64 years old, suffers from numerous physical and mental health conditions. He is a veteran and previously worked as a roofer, landscaper, recreation aide for a parks department, and as an automobile self-service station attendant. Robert applied for benefits on September 18, 2012, claiming disability beginning on July 1, 2008 due to severe asthma, chronic obstructive pulmonary disease ("COPD"), hypertension, and neuropathy in his legs and arm. (R. 194-206). Robert has also been diagnosed with bronchospastic airway disease, coronary artery disease, Barrett's esophagus and other esophageal problems, and has been treated for anxiety, depression, and bipolar disorder. He has history of alcohol dependence and seizures. Robert is insured through December 31, 2013. *Id*. at 1207.

Robert's claims were initially denied in December 2012, and upon reconsideration in March 2013. (R. 53-94). In March 2014, he appeared and testified at a hearing before ALJ Edward Studzinski. *Id*. at 25-52. On August 26, 2014, the ALJ issued a decision denying Robert's applications. *Id*. at 11-19. On November 14, 2016, Magistrate Judge Jeffrey T. Gilbert issued an opinion affirming the Commissioner's decision to deny benefits. Robert appealed this decision to the Seventh Circuit Court of Appeals. In an Order dated November 8, 2017, the Seventh Circuit concluded that "the ALJ's decision [was] not supported by substantial evidence because the ALJ wholly rejected [Robert's] complaints of fatigue and difficulty walking." *Id*. at 1330. The court reversed and remanded this matter to the agency for further proceedings on two grounds: (1) "the ALJ's decision to find [Robert] able to walk without restriction [was] not support by substantial evidence" and (2) "the ALJ failed to address adequately [Robert's] fatigue, or drowsiness, which [he] attributes to his medications for hypertension." *Id*. at 1335.

On remand from the Seventh Circuit, ALJ Studzinski held another hearing on September 26, 2018. (R. 1230-1249). Robert failed to appear at the hearing because he was sick. *Id*. at 1206;

2

1440. Robert's counsel appeared, and the ALJ received testimony from a second vocational expert. *Id*. at 1245-48. On January 24, 2019, the ALJ issued a second decision denying benefits. *Id*. at 1206-1222. The decision followed the required five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Robert had not engaged in substantial gainful activity since July 1, 2008, the alleged onset date. *Id*. at 1209. At step two, the ALJ found that Robert had the severe impairments of asthma, COPD, hypertension, right arm neuropathy, and coronary artery disease. *Id.* The ALJ found that Robert also had non-severe impairments of esophageal difficulties, history of alcohol abuse, and flatfeet. *Id*. at 1209-11. The ALJ further determined that Robert did not have a severe mental impairment. The ALJ considered the "Paragraph B" criteria and found that Robert had "no limitation in understanding remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *Id*. at 1210. At step three, the ALJ determined that Robert did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* at 1211.

The ALJ then concluded that Robert retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that with his right upper extremity, he can frequently but not constantly reach, grasp and perform fine manipulations and he should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. (R. 1212). Based on this RFC, the ALJ determined at step four that Robert could perform his past relevant work as a laborer landscaper and recreational aide. *Id.* at 1221. The ALJ found that Robert was not disabled. *Id.* at 1221-22. The ALJ's decision became the final decision of the Commissioner on March 26, 2019.

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

4

The ALJ found Robert not disabled at step four of the sequential analysis because he retains the RFC to perform his past work as a laborer landscaper and as a recreation aide. Robert asserts that the ALJ committed several reversible errors in evaluating the side effects of his medications, considering his ability to walk, and failing to obtain updated opinions from a medical expert and psychological expert. As explained below, the Court agrees on all three points and this case must be remanded for further consideration.

## A.      Side Effects of Robert's Medications

Robert first contends that the ALJ again mischaracterized the side effects of his medications. In is Order, the Seventh Circuit held that the ALJ had "failed to address adequately his fatigue, or drowsiness, which [Robert] attributes to his medications for hypertension." (R. 1335). The Court agrees that the ALJ's decision is flawed in this regard and remand is required because the ALJ failed to explain adequately why he rejected Robert's testimony concerning the side effects of his medications. The ALJ's rationale for again not crediting Robert is not supported by substantial evidence.

During the relevant time frame, Robert was prescribed a number of medications, including Advair, Albuterol (Proair, Proventil, Ventolin), aspirin, Atrovent, Hydrochlorothiazide, metoprolol, mirtazapine, mometasone furoate, Neurontin, Nitroglycerine, Omeprazole, Simvastatin, and Singulair. (R. 229, 264, 283, 287-88, 51721, 769-79, 1529-48). At the hearing on March 11, 2014, Robert testified that the medication for his "blood pressure" causes drowsiness "for which he naps two or three times daily for 20 to 60 minutes." *Id*. at 38-39, 1332. On his Disability Report-Appeal forms, Robert indicated that Advair, Neurontin, nitroglycerine, and Ventolin cause him drowsiness. *Id*. at 264, 283. A pharmacy admission evaluation note indicates that drowsiness is among the known side effects of Robert's medications. *Id*. at 1043. Robert's assertions about the side effects of his medications are central to the disability analysis in this case.

Both vocational experts testified that no jobs would be available for a hypothetical individual for whom side effects from medications would cause him to be off task for an unscheduled 60 minutes per day or more than 15 percent of a workday. *Id*. at 49, 1247.

In the prior decision from August 26, 2014, the ALJ found that "the record documents the claimant's hypertension is well-controlled with Lisinopril 40 milligrams daily and Hydrochlorothiazide 25 milligrams daily without side effects, despite the claimant's testimony that Lisinopril causes him drowsiness." (R. 17). On appeal, the Seventh Circuit determined that this statement by the ALJ "mischaracterized the evidence" because Robert "said his 'blood pressure pills,' not Lisinopril specifically, caused drowsiness." *Id*. at 1335. In reaching this conclusion, the court pointed out that the "ALJ overlooked the fact that at the time of the hearing, [Robert] was taking a third blood-pressure medication, metoprolol." *Id*. The court also faulted the ALJ for relying on Robert's "statements to doctors during periods in 2007 through 2009 when [he] was not taking metoprolol" in finding Robert "free of side effects." *Id.* The court explained that those statements "shed little light on whether in 2013 [Robert] was experiencing side effects from a different combination of drugs." *Id*. The Order noted that Roberts "also reported in the applications for benefits that he experiences drowsiness from other drugs, including Advair, Neurontin, Ventolin, and nitroglycerin, yet the ALJ did not address those assertions at all." *Id*. at 1336.

To correct these errors on remand, the ALJ was required to address all of the relevant evidence concerning Robert's assertion that his medications cause drowsiness and either incorporate it into his analysis or explain why it was rejected. The law of the case doctrine requires an administrative agency to "conform its further proceedings in the case to the principles set forth in the [appellate] decision." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). Moreover, the

regulations require an ALJ evaluating a claimant's symptoms to consider the "type, dosage, effectiveness, and side effects of any medication" the claimant takes or has taken. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *see also* SSR 16-3p, 2016 WL 1119029, at *7 March 16, 2016); SSR 96-8 p, 1996 WL 374184, at *5 (July 2, 1996).

Upon remand, the ALJ failed to adequately consider the side effects of Robert's medications. In the second decision, the ALJ again rejected Robert's assertion that his medications cause drowsiness. The ALJ found that "[a]t times, the record noted claimant appeared tired or fatigued, but there was no evidence of ongoing fatigue in the record." (R. 1218). The ALJ noted that Robert has been maintained on Metoprolol, Lisinopril, Hydrochlorothiazide, Clopidogrel (Plavix), Simvastatin, Omeprazole, and Ondansetron *Id.* at 1210, 1214. The ALJ also noted that Robert has been: (1) prescribed Mirtazapine, Depakote with no side effects, a multivitamin, Thiamine, folic acid, and Albuterol and Symbicort inhalers and (2) treated with Albuterol with no adverse reactions, Ativan, and Dilacor. *Id.* at 1210, 1215-17, 1219-20. As to Lisinopril and Hydrochlorothiazide, Robert correctly argues that the ALJ repeated the same misstatement verbatim he offered in his original decision. The ALJ's second decision stated that Robert's "hypertension is well controlled with Lisinopril 40 milligrams daily and Hydrochlorothiazide 25 milligrams daily without side effects, despite the claimant's testimony that Lisinopril causes him drowsiness," without considering that the Seventh Circuit found that this statement "mischaracterized the evidence." *Id.* at 17, 1214, 1335. Other than these statements, the ALJ did not make any findings as to what medications Robert has taken since the alleged onset date, at what dosage levels, or which side effects he experiences. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Further, despite the Seventh Circuit's explicit criticism of the ALJ's reliance on Robert's statements to doctors in 2007 through 2009 "in declaring him free of side effects," on

7

remand, *the ALJ cited the exact same evidence*. *Id.* The ALJ's reiteration of these errors following remand raise questions about how thoroughly and carefully he evaluated the record with regard to Robert's medication side effect of fatigue.

The ALJ was further required to evaluate whether Robert's other medications cause drowsiness, but he failed to do so. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). As the Seventh Circuit noted, Robert "also reported in his applications for benefits that he experiences drowsiness from other drugs, include Advair, Neurontin, Ventolin, and nitroglycerin, yet the ALJ did not address those assertions at all." (R. 1336). Despite the Seventh Circuit's explicit observation, the ALJ again did not mention these medications and their side effects in his decision in assessing Robert's subjective symptom allegations. By not mentioning this information, it is unclear from the ALJ's decision whether he considered "[t]he type, dosage, effectiveness, and side effects" of these medications in determining that he does not suffer from adverse side effects. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Also troubling is the ALJ's rejection of evidence that Robert had previously experienced the side effect of fatigue when taking metoprolol because it occurred before his alleged onset date. The Seventh Circuit pointed out that "in 2004 a physician cancelled a prescription for metoprolol *because that drug caused [Robert] fatigue*." (R. 1335) (emphasis in original); *see id.* at 711 (5/27/2004—"He does complain, however, of increased generalized weakness and tiredness, which started ever since being place on metoprolol. . . . I will discontinue Metoprolol and start Coreg."). However, the ALJ did not consider side effects of metoprolol, except to state that the Seventh Circuit "relied on a citation for fatigue which was a medication side effect from 2004,

which was before the alleged onset date." *Id*. at 1218. To the extent the ALJ is suggesting that this evidence can be ignored simply because it predated Robert's alleged disability onset date, the Court disagrees. This evidence is part of the relevant inquiry, along with the evidence after the alleged onset date. The ALJ is required to "consider all evidence in [the] case record when [he] make[s] a determination or decision whether [the claimant is] disabled," including evidence that predates a claimant's alleged onset date. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). "[T]he ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence." *Johnson v. Sullivan*, 915 F.2d 1575, at *3 (7th Cir. 1990); *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (holding the ALJ's failure to mention a treating physician's opinions rendered two and three years prior to the claimant's alleged onset date of disability was reversible error); *Mowaat v. Colvin*, 2016 WL 3951626, at *7 (N.D. Ill. July 21, 2016) (holding that "[w]hile the records may be from three years before the alleged onset date, which is a factor that should be considered . . . that alone does not automatically render them outdated.").

Whether Robert experienced side effects from metoprolol in the past sheds light on whether Robert would be expected to respond to the same medication again with side effects. If the ALJ questioned the relevancy of this pre-alleged onset date evidence, he should not have disregarded it but instead should have consulted a medical expert. Further, if this evidence was irrelevant simply because it pre-dated Robert's alleged onset date, the Seventh Circuit clearly would not have emphasized it. Notably, the ALJ offers *no* analysis for why the Seventh Circuit would highlight the metoprolol evidence before Robert's alleged onset date unless it was probative. Therefore, the ALJ erred in failing to consider this supportive evidence simply because it pre-dated Robert's alleged onset date.

The additional reasons the ALJ stated for rejecting Robert's allegation that his medications cause drowsiness do not provide substantial evidence in support of the ALJ's rejection of Robert's account of drowsiness. The ALJ concluded that Robert's claims of fatigue were not supported because various medical records "do not suggest significant fatigue," "fail to mention significant fatigue," or "do not mention ongoing fatigue." (R. 1214, 1215, 1217). In particular, the ALJ cited records from June 1, 2014, June 21, 2015, and March 5, 2016 to March 11, 2016, all of which were emergency room visits or a hospital stays. *Id*. In the first visit, Robert was treated in the emergency room at Franciscan Healthcare on June 1, 2014 for a seizure. *Id*. at 1214, 1754. The ALJ noted examination findings of lungs clear to auscultation with normal breath sounds and normal range of motion, motor strength, and sensation with no edema, tenderness, myalgias, nor arthralgias and then concluded that "these findings do not suggest significant fatigue." *Id*. at 1214. The ALJ did not explain why these normal examination findings discredited Robert's testimony that drowsiness is a side effect of his medication and that connection is not obvious.

The ALJ's cite to records from Robert's admissions to Ingalls Hospital in June 2015 and Community Hospital in March 2016 also do not negate his allegation about the medication side effect of fatigue. (R. 1215, 1217). These records occurred in the context of a five-day hospital stay for alcohol abuse/alcohol withdrawal, atypical chest pain/epigastric pain, and possible seizure in June 2015 followed by a transfer to a Veterans Administration Medical Center for alcohol detoxification and rehabilitation and a seven-day hospital stay in March 2016 for alcohol dependence with withdrawal delirium, intentional overdose and acute respiratory failure resulting in Robert being intubated with ventilatory support. Moreover, as the ALJ noted, Robert reported upon his admission to Ingalls Hospital that he had been non-compliant with his hypertension

10

medications for the past three days and his final diagnosis from his admission at Community Hospital included noncompliance with his medication regime and treatment. *Id.* at 1215, 1217, 1800, 1863. Given this context, the ALJ's focus on the lack of a fatigue finding related to a medication side effect is misplaced. It was not reasonable to expect that these hospital records related to his alcohol abuse would note the medication side effect of fatigue. *Massey v. Comm'r Soc. Sec. Admin.*, 400 F. App'x 192, 194 (9th Cir. 2010) ("It is irrelevant that [claimant] did not report all of the symptoms noted by [his treating physician] at his emergency room visits because the only symptoms that motivated his trips to the emergency room were vomiting, nausea and abdominal pain."). Accordingly, the Court finds that this reason for rejecting Robert's statements of the medication side effect of drowsiness fails.

Similarly, the ALJ cited the Robert's denial of shortness of breath and of dyspnea on exertion, a normal cardiac examination, and an EKG showing a normal sinus rhythm on March 3, 2016. (R. 1214; 1587-88). The ALJ then wrote that "[w]hile not directly indicative of fatigue . . . denial of such symptoms and these cardiac findings do not suggest significant limitations in [that] area. *Id.* The ALJ failed to explain how this evidence undermines Robert's allegation of drowsiness as a side effect of his medications. Without further explanation, it is unclear how these records contradict Robert's statements that he experiences the medication side effect of drowsiness.

For all of these reasons, the ALJ's rejection of Robert's statements that his medications cause drowsiness is not supported by substantial evidence. On remand, the ALJ must confront all of the evidence of record pertaining to Robert's medication side effects and all of the required considerations relating to medications, including their cumulative impact. Specifically, the ALJ must (1) determine which medications plaintiff was taking during the relevant time period and at

what dosages and (2) make findings as to the nature and severity of these medications' side effects and revise Robert's RFC accordingly. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For purposes of remand, the Court also notes that the Seventh Circuit has observed that a failure to complain about medication side effects to doctors does not in and of itself discredit a claimant's allegations. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009 ) ("To being with, we are skeptical that a claimant's failure to identify side effects undermines her credibility—after all no everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects."). Again and more to the point, Robert did tell a physician that metoprolol caused him fatigue and the physician cancelled the prescription, evidence that the ALJ improperly ignored.

## B. Robert's Ability to Walk

At the first hearing, Robert testified that he becomes winded walking any distance and can walk ten yards before having to stop. (R. 31). He further stated that he would be unable to be on his feet for more than two hours in an eight-hour workday. *Id*; *see also id*. at 39, 43. The VEs testified that an inability to stand and walk for more than two hours in an eight-hour workday would preclude a hypothetical individual from being a landscape laborer and recreational aide. *Id*. at 49, 1247. The ALJ's original decision found that Robert was capable of performing light work and that his standing and walking abilities were "not limited throughout an eight-hour workday." *Id*. at 17. Light work "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *6 (January 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

On appeal to the Seventh Circuit, Robert argued that his RFC was "more limited than found by the ALJ found because his COPD, other impairments, and medication make it hard for him to walk for long periods of time and stay awake during the workday." (R. 1334). The Seventh Circuit determined that the "ALJ exaggerated [Robert's] ability to walk, which is limited to some degree by shortness of breath from his COPD and other impairments." *Id*. The court found that the ALJ's ruling out "the existence of *any* limitation on William's ability to walk" "lack[ed] support in [Robert's] testimony or the medical record." *Id*. (emphasis in original). The Seventh Circuit explained that the medical "tests consistently have shown at least mildly reduced heart and lung function, and the medical record is replete with references to shortness of breath and difficulty walking. *Id*. at 1335. After noting this, the Seventh Circuit stated that "[t]hose references make sense because even the ALJ acknowledges that Williams suffers from asthma, COPD, and heart disease, all of which are severe." *Id*.

The Seventh Circuit found that the ALJ's RFC determination with respect to Robert's walking capability was problematic for several reasons. One problem with the ALJ's first decision involved his consideration of Robert's daily activities. The Seventh Circuit noted that Robert's daily activities of microwaving food, occasionally doing laundry, and driving were "quite minimal." (R. 1335). It was improper for the "ALJ [to] equate[] these very minor household tasks with an *unlimited* ability to walk during an eight-hour workday." *Id*. The court determined that even if the ALJ was rightly skeptical of Robert's testimony that he could only walk 10 yards at a time before getting winded, "that doubt cannot explain the ALJ's extreme leap in finding that [Robert] could walk without *any* restriction." *Id*. The court stated that "[s]uch a leap is explained only by the faculty logic that we have rejected over and over again." *Id*. at 1334-35. The Seventh

Circuit concluded that the ALJ's decision to find Robert "able to walk without restriction [was] not supported by substantial evidence." *Id*. at 1335.

Robert argues that, in the second decision, the ALJ again improperly exaggerated his ability to walk by finding that Robert had no walking limitations whatsoever. In his second decision, despite the Seventh Circuit's finding that Robert's ability to walk was "limited to some degree by shortness of breath from his COPD and other impairments," the ALJ again determined that Robert's standing and walking abilities "are not limited throughout an eight-hour workday." (R. 1214). The ALJ failed to include any limitation on walking in his second RFC finding. *Id*. at 1212. The ALJ stated that there was "no basis in the medical record for the claimant's extreme allegations of being winded after walking 10 yards." *Id*. at 1213. The ALJ determined that Robert had "not identified sufficient evidence establishing . . . an inability to perform the standing and walking required in light-level work." *Id*. In support of this conclusion, the ALJ noted: (1) denial of "angina, chest pains, shortness of breath, of dyspnea on exertion," a normal cardiac examination, and EKG showing normal sinus rhythm on March 3, 2016 "do not suggest" significant limitations in walking; (2) Robert "has full range of motion throughout" and there is "no clinical evidence of arthritis" (3) Robert's leg strength is normal; (4) Robert "does not use orthotics" and "does not require any assistive devices for ambulation" (5) emergency room and hospital stay records "do not suggest" or mention "limited ability to walk" or "walking limitations;" (6) "no difficulty performing activities of daily living or driving;" and (7) the state agency physicians did not find any walking limitations. *Id*. at 1214-17, 1218-21.

As the Seventh Circuit held, while these reasons may be inconsistent with Robert's claim that he could walk only 10 yards without becoming winded, they do not provide substantial evidence for finding that Robert could walk without any restriction. (R. 1334-35). The relevant

question is whether Robert has the ability to stand and/or walk for a good part of an eight-hour workday from the alleged onset date through the date of the ALJ's decision. The reasons provided by the ALJ do not provide substantial evidence for his conclusion that Robert is able to walk without any restriction during an eight-hour workday. *First*, the ALJ cherry-picked evidence from the March 3, 2016 medical record to support his conclusion that Robert did not have walking limitations, ignoring parts of that record that contradicted his conclusion. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (noting Seventh Circuit has "repeatedly forbidden" cherry-picking of the medical record). The ALJ emphasized Robert's denial of angina, chest pains, shortness of breath, and dyspnea on exertion, a normal cardiac examination, and an EKG showing normal sinus rhythm. (R. 1214, 1587-88). However, the ALJ did not note that the same medical record indicated that Robert reported that "he cannot walk 2 blocks or climb 2 flights of stairs without [shortness of breath] but denies [chest pain]" and the March 3, 2016 EKG was "abnormal," revealing a prolonged QT interval. *Id*. at 1586-87.

*Second*, a normal range of motion on one examination and the lack of evidence of arthritis are not inconsistent with Robert's claim of inability to walk six hours in an eight-hour workday due to shortness of breath. (R. 1215, 1218, 1220, 1221, 1716). Robert's shortness of breath, not an abnormal range of motion in his joints or arthritis, is the alleged cause of his limited ability to walk. The ALJ did not explain how range of motion or arthritis relates to shortness of breath from COPD and other impairments. *Clifford*, 227 F.3d at 872 (ALJ "must build an accurate and logical bridge from the evidence to his conclusion.").

*Third*, regarding Robert's medical records from a Veterans Administration facility related to alcohol detoxification and rehabilitation, the ALJ noted: "While walking is not directly mentioned, his leg strength was normal." *Id*. at 1216. Normal leg strength does not undermine a

limited ability to walk due to shortness of breath. Once again, there is no logical bridge between the evidence and the ALJ's finding that Robert is able to walk without restriction.

*Fourth*, the ALJ found it persuasive that Robert "requires no assistive device for ambulation" and "does not use orthotics." (R. 1218, 1220, 1221). The significance of these observations is unclear. Robert can be limited to less than a full range of light work without the need of an assistive device or use orthotics. Because the ALJ's decision lacks any explanation on how the fact that Robert is able to walk without an assistive device or the use of orthotics establishes that his ability to walk is unlimited, the ALJ failed to build the required "accurate and logical bridge" between this evidence and his conclusion that Robert could walk without any restriction.

*Fifth*, the ALJ found significant the fact that the hospitals records from June 1, 2014, June 21, 2015, and March 5, 2016 to March 11, 2016 "do not suggest" or "fail to mention" a "limited ability to walk" or "walking limitations." (R. 1214, 1215, 1217). Again, these hospital records indicate that Robert sought treatment related to his alcohol abuse. As with the ALJ's citation to these records as evidence of lack of medication side effects, the fact that these record do not mention walking limitations does little to contradict his contention that his ability to walk for long periods of time is limited by shortness of breath from his COPD and other impairments. None of these records indicates that Robert's walking ability was independently evaluated and none contain opinions on Robert's ability to walk for long periods of time. The failure of these hospital records to mention walking limitations does not establish that Robert was capable of walking and standing for most of an eight-hour workday, as required by light work.

*Sixth*, in support of his conclusion that Robert's walking ability is not limited, the ALJ noted that Robert "had no difficulty performing activities of daily living or driving." (R. 1218

16

*citing* 242-50, 1574). The ALJ wrote that the appellate court "stated that I erred in equating the claimant's activities of daily living with an unlimited ability to walk throughout a workday." *Id*. at 1218, 1334. The ALJ "disagreed" with the Seventh Circuit's "interpretation of his analysis" and stated that "[a]t no point did my previous decision conclude that the claimant's activities were equivalent of competitive work." *Id*. at 1218. The ALJ also wrote that the appellate court "overlook[ed] that the claimant bears the burden of proving the extent to which he is functionally limited." *Id*. **The ALJ is not free to disregard the Seventh Circuit's conclusion merely because he disagreed with its interpretation of his analysis**. In any event, the minimal activities of daily living listed in the evidence cited by the ALJ (watching television, taking care of personal hygiene, preparing sandwiches and frozen dinners, washing dishes, doing laundry, occasional driving, and shopping for food) are not inconsistent with Robert's allegation that it is hard for him to walk for long periods of time due to shortness of breath. *Id*. at 1210, 1218. Nor do these limited activities suggest an ability to perform the walking requirements of light work.

*Seventh*, the final piece of evidence discussed by the ALJ in support of his conclusion that Robert's ability to walk was unlimited is the fact that the state agency physicians "did not find any limitations of standing or walking." (R. 1219). The ALJ wrote that these "uncontradicted medical opinions directly support my assessment." *Id*. The Seventh Circuit pointed out on appeal that while the state agency physicians categorized Robert's COPD as severe, they "did not mention [his] asthma, hypertension, neuropathy, anxiety, or depression." *Id*. at 1332. The state agency physicians' opinions were before the Seventh Circuit on appeal and the appellate court found that the medical record was insufficient to support a finding that Robert was able to walk without any restriction. *Id*. at 1332, 1334-35. Accordingly, the state agency physicians' opinions do not

provide substantial evidence necessary to support the ALJ's finding that Robert's walking ability is not limited throughout an eight-hour workday.

In light of these deficiencies, the ALJ's determination that Robert retained the ability to walk for six hours out of an eight hour workday as required for light work is not supported by substantial evidence. The case must be remanded for further consideration of this issue.

## C. Updated Medical Expert Opinions Regarding Robert's Limitations

Robert finally argues that on remand, the ALJ should have obtained an updated evaluation of his RFC by another medical consultant and a psychological consultant. "ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that the ALJ erred by evaluating medical evidence of "significant, new, and potentially decisive findings" himself "[i]nstead of consulting a physician"). The Court agrees that in reaching his RFC conclusion, the ALJ erred in relying on the state agency physicians' opinions, the only medical opinions to which the ALJ assigned any weight, because those opinions had become stale in light of additional medical evidence submitted after those opinions were rendered.

The state agency physicians' opinions were rendered in December 2012 and March 2013, almost six years before the date of the ALJ's latest decision. On December 10, 2012, state agency physician Vidya Madala, M.D., determined Robert could perform heavy to very heavy exertional work, with a limitation to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 53-70). On reconsideration, on March 25, 2013, Bharati Jhaveri, M.D., affirmed Dr. Madala's opinion. *Id*. at 73-92. The ALJ assigned "some weight" to the opinions of the state

agency physicians in limiting Robert to light exertional work with limitations of (1) frequent but not constant reaching, grasping, and performance of fine manipulation due to right arm neuropathy and (2) no concentrated exposure to pulmonary irritants due to asthmas and COPD. *Id*. at 1213, 1220. The ALJ reasoned that the opinions "were reasonable at the time and well supported, but the consultants did not have an opportunity to consider subsequent documentation and testimony in making their conclusions about the claimant's limitations that I have found to be more limiting." *Id*. at 1220. The ALJ's decision to rely on the state agency physicians' opinions is puzzling because they found that Robert had only one medically determinable impairment—COPD, which contradicts the ALJ's finding that Robert had five severe impairments—asthma, COPD, hypertension, right arm neuropathy, and coronary artery disease. The only opinion evidence the ALJ credited in his decision in support of his RFC determination is that of the non-examining state agency physicians.

Robert points to evidence in the record showing that his physical and mental condition worsened after the state agency physicians rendered their opinions. Robert lists some of the evidence submitted after March 25, 2013, the date of the last state agency reviewer's opinion: (1) On May 3, 2013, Robert reported positional lightheadedness, nonspecific chest discomfort, chronic dyspnea on exertion, three pillow orthopnea (R. 547, 587); (2) a treating cardiologist opined on May 3, 2013 that Robert's functional capacity was limited due to neuropathy and dyspnea (*id*.); (3) an endoscopy on May 14, 2013 gave the impression of Barrett's esophagus and benign-appearing esophageal stricture associated with inflammation and ulcers form severe reflux esophagitis (*id*. at 1125); (4) a pulmonary function test on July 16, 2013 revealed decreased FEV1, decreased FEV1/FVC ratio, reduced FEF 25-75%, reduced FEF50, decreased MVV, and an assessment of a f mild obstructive defect (*id*. at 1190-91); (5) a provisional diabetes diagnosis on

August 9, 2013 (*id*. at 811); (6) a note on August 10, 2013 that Robert had a history of Barrett's esophagus with worsening dysphagia, was no longer able to swallow pills without using olive oil as lubrication, and pills get caught in his esophagus (*id*. at 869-70); (7) on August 15, 2013, a treating anesthesiologist opined that Robert is limited in exertional tolerance by shortness of breath on exertion related to his COPD (*id*. at 864); (8) a treating psychiatrist's assignment on August 15, 2013 of a Global Assessment Functioning ("GAF") score of 45 due to adjustment disorder, mixed anxiety/depression, depressive disorder not otherwise specified, alcohol dependence, bereavement related to the death of his younger brother, and stress (*id*. at 857-58); (9) a licensed clinical social worker's diagnosis of adjustment disorder, mixed anxiety/depression, depressive disorder, not otherwise specified, and alcohol dependence and an assessment of a GAF score of 45 on October 16, 2013 (*id*. at 1721, 1085-86); (10) an endoscopy on October 15, 2013 evidencing a stricture and an ulcer of the esophagus (*id*. at 1091-93); (11) on October 16, 2013, Robert rated his depression at 10/10, on average, over the past 30 days and a treating psychiatrist assessed a GAF of 55 (*id*. at 956-58); (12) an endoscopy on November 19, 2013 indicating Robert had persistent esophagitis and a hiatus hernia (*id*. at 915-16); (13) an esophageal stretching procedure on January 7, 2014 tore Robert's esophagus (*id*. at 1002-03); (14) an echocardiogram on March 4, 2014 showed a moderate impairment in left ventricular diastolic relaxation with mild to moderate elevated left sided filing pressure (*id*. at 1199); (15) treated in the emergency room at Franciscan Healthcare on June 1, 2014 for a seizure (*id*. at 1754-70); (16) abnormal ECG on June 1, 2014 indicating sinus tachycardia, nonspecific ST abnormality, and prolonged QT interval (*id*. at 1767, 1770); (17) hospitalization at Ingalls Hospital from March 20, 2015 to March 23, 2015 for alcohol dependence, new onset of seizure, and transient ischemic attack with left-sided weakness (*id*. 1720, 1823-60); (18) admission to Ingalls Memorial Hospital on June 21, 2014 to June 24, 2014 for alcohol abuse,

alcohol withdrawal, atypical chest pain/epigastric pain, and possible seizure (*Id*. at 1772-1822); (19) admission to Jesse Brown Veterans Administration Medical Center from June 24, 2015 to July 8, 2015 for alcohol detoxification and treatment with Depakote for a presumed bipolar type II disorder (*id*. at 1573-76, 1599-1608); and (20) hospitalization at Saint Francis Hospital on September 21, 2015 for exacerbation of asthma and COPD (*id*. at 1586, 1588).[2] Doc. 13 at 13-14.

The Court also notes EKGs performed on November 19, 2013 and March 3, 2016 were abnormal and showed a prolonged QT interval. (R. 929, 1587, 1625). Further, on August 9, 2013 at his cardiology outpatient appointment, Robert complained of dizziness and chest pressure for the past two days and worsening chest pressure and shortness of breath on exertion. *Id*. at 1164, 1168. He was transferred to the emergency department for evaluation of low blood pressure and it was noted that his functional capacity was limited secondary to neuropathy and dyspnea. *Id*. at 1174, 1178-79. In addition, Robert was hospitalized from March 5, 2016 to March 11, 2016 for alcohol dependence with withdrawal delirium tremens, intentional overdose, and acute respiratory failure. *Id*. at 1863-1940.

Considering the record as a whole, the Court agrees that additional medical review was warranted. The state agency physicians reviewed a significantly incomplete set of Robert's medical records. Almost six more years of medical records submitted after the state agency reviews could have reasonably changed their opinions, especially given that Drs. Madala and Jhaveri concluded that Robert was capable of work at all exertional levels. For example, in November 2012, a pulmonary function test indicated a normal spirometry. However, a July 2013

---

[2]     The Commissioner points out that Robert erroneously listed a nuclear stress test which showed an anterior wall defect on both stress and rest imaging as new evidence from January 17, 2014. Doc. 13 at 14. The Commissioner is correct that the stress test actually took place on January 17, 2004, which was nine years before the last state agency physician's opinion. (R. 716).

pulmonary function test indicated a mild obstructive defect in spirometry. (R. 483, 1190-91, 1213). The Commissioner points out that the July 2013 pulmonary function test also showed normal lung volumes and gas exchanges and that the reviewing physicians had already acknowledged Robert's COPD. But the significance of this mild obstructive defect finding, in combination with the additional subsequent records, requires a doctor's interpretation. This is especially true given that the state agency physicians expressly relied on normal "vent studies" in forming their opinions. *Id.* at 58-59, 67-68, 79-80, 89-90.

Moreover, the state agency physicians both found that Robert's sole severe impairment was COPD and that his sole limitation was the need to avoid concentrated exposure to pulmonary irritants like dust. The Seventh Circuit noted that the state agency physicians categorized Robert's COPD as severe, but they "did not mention [his] asthma, hypertension, neuropathy, anxiety, or depression." *Id.* at 1332. The state agency doctors also did not mention Robert's coronary artery disease. In light of the more recent evidence, the ALJ concluded that Robert's asthma, hypertension, neuropathy, and coronary artery disease constituted severe impairments because they significantly affected his ability to perform basic work functions. *Id.* at 1209; *see Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) ("A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.' ") (quoting 20 C.F.R. § 404.1520(c)). By finding that Robert's impairments of asthma, hypertension, right arm neuropathy, and coronary artery disease are severe, the ALJ rejected the state agency reviewers' contrary opinions. The Court finds it unreasonable to believe that subsequent medical records related to Robert's asthma, hypertension, neuropathy, and coronary artery disease, impairments the ALJ concluded were severe, would not change the state agency physicians' findings that Robert was able to perform all levels of exertional work. Indeed, post-

March 2013 testing showed abnormalities in Robert's heart function that could have affected the state agency doctors' assessments. (R. 1198, 1587, 1625, 1767, 1770). Documented heart abnormalities in combination with Robert's other impairments might reasonably relate to Robert's ability to walk for long periods of time. Likewise, it is reasonable to conclude that the additional mental health records, including treatment for a presumed bipolar disorder, could have changed the state agency physicians' opinion that Robert did not have a severe mental impairment. A presumed bipolar disorder diagnosis is a new and serious development in Robert's mental health. *Moreno v. Berryhill*, 882 F.3d 772, 728-29 (7th Cir. 2018) (remand for new mental health assessment where ALJ relied on 2007-state agency psychologist opinion that the court found "stale" in light of treating psychologist's office notes from 2010-2012 documenting "significant and new developments" in claimant's mental health).

The ALJ was not qualified to assess the significance of the post-March 2013 without the benefit of an expert opinion. The Seventh Circuit has held "repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018) (*quoting Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014)). Rather, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Covlin,* 763 F.3d 718, 722 (7th Cir. 2014). The ALJ was not qualified to interpret the abnormal March 2014 echocardiogram, November 2013, June 2014 and March 2016 electrocardiograms, and July 2013 pulmonary function test results and determine that in combination they would not have affected his ability to stand and walk for six hours during a workday, a finding upon which the ALJ's denial of benefits hinged. *See Stage,* 812 F.3d at 1125 ("The ALJ here was not qualified or authorized to determine that [claimant's] need for a hip replacement would not have affected her supposed ability to stand

23

and walk for six hours a day"); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("The MRI results may corroborate [claimant]'s complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion."); *McHenry*, 911 F.3d at 871 ("[T]he ALJ was not qualified to assess on his own how the April 2014 MRI results related to other evidence in the record."). Because medical expertise is required to determine the significance of the post-March 2013 evidence, a remand is required so the ALJ can reevaluate Robert's RFC based on upon opinion evidence from medical and psychological experts who have considered the entire record.

The ALJ and the Commissioner point out that no doctor's opinion contained in the record indicated greater work-related limitations than those found by the ALJ. (R. 1212-13). While it is true that no medical source suggested that any greater limitation was required, it is also true that the ALJ's RFC determination was not adequately supported by any medical opinion evidence. The state agency physicians' opinions were so outdated that they ALJ should not have relied upon them when assessing Robert's functional capacity on remand and the Seventh Circuit concluded that the state agency physicians' opinions did not constitute substantial evidence for the ALJ's finding that Robert was able to walk without restriction. In addition, the ALJ did not even rely upon the medical judgment of the state agency physicians for his conclusion that Robert's asthma, hypertension, right arm neuropathy, and coronary artery disease constitute severe impairments. Besides the stage agency reviewing physicians' opinions, there are no other medical opinions assessing Robert's functional abilities based on his mental and physical limitations in the record. The Commissioner faults Robert, who was represented by counsel and bore the burden of proving his alleged his alleged limitations, for failing to present or request a new medical opinion on remand. Although Robert has the burden to prove disability, the ALJ also "has a basic obligation

24

to develop a full and fair record." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). In this case, the ALJ should have obtained an updated medical and psychological review of the record to provide an informed basis for the RFC determination. Finally, Robert testified that he is more limited than the ALJ's RFC finding, and his testimony cannot be discounted without a legally adequate analysis supported by substantial evidence. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (Commissioner noted that no doctor opined that claimant had more limitations than the ALJ incorporated into her RFC assessment but claimant "*testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.") (emphasis in original). As described above, the ALJ has not provided sufficient justification for discounting Robert's subjective allegations.

### D.    Award of Benefits & Reassignment to a Different ALJ

Robert requests that the Court reverse the ALJ's decision and award benefits. However, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) ("When an ALJ's decision is not supported by substantial evidence, we have held that a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of benefits."). Although there are errors in the ALJ's decision, numerous factual issues remain unresolved, including an evaluation of Robert's subjective symptom allegations and a reassessment of the RFC, and an award of benefits is therefore not warranted. However, given that the ALJ had an opportunity to correct the errors identified by the Seventh Circuit and failed to do so, the Court recommends that Robert's case be assigned to a

different ALJ on remand. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (recommending reassignment because "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim.").

Further, Robert's request for another hearing within 120 days is denied "because this Court does not control the dockets of the administrative law judges." *Calvin G. v Berryhill*, 2019 WL 2088060, at *7 n.5 (N.D. Ill. May 13, 2019); *see also Allord v. Astrue*, 631 F.3d 411, 417 n. 11 (7th Cir. 2011) (declining to impose a time limitation for further proceedings on remand). Nevertheless, the Court notes that Robert's applications have been pending for more than eight years. Accordingly, the Court recommends that the Commissioner set this for an expedited hearing preceded by a medical and psychological review of the evidence and promptly issue a revised decision based upon the combined effect of Robert's mental and physical impairments. *See* (R. 1336).

### III. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment [12] is granted and the Commissioner's Motion for Summary Judgment [21] is denied. The ALJ's decision is reversed and remanded for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff Robert M. W. and against the Commissioner.

**SO ORDERED.**

Dated: November 19, 2020

Sunil R. Harjani
United States Magistrate Judge